IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NULOGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MENASHA PACKAGING COMPANY, LLC, MENASHA CORPORATION, DELOITTE LLP and DELOITTE CONSULTING LLP,<br><br>Defendants. | Case No. 21-cv-1164<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

This is a trade secret action brought by Nulogy Corporation against Menasha Packaging Company, LLC, Menasha Corporation, Deloitte LLP, and Deloitte Consulting LLP. For reasons stated herein, Menasha's Motion to Dismiss [25] is granted. Deloitte's Motion to Dismiss [22] is denied as moot.

**I.      Background**

The following factual allegations are taken from the Complaint (Dkt. 1 "Compl."). Nulogy Corporation is a leading Canadian technology corporation with its head office in Toronto, Ontario. *Id*. ¶ 2. It develops and supports software products and valuable functionalities for a variety of businesses, including supply chain management, warehouse management, contract packaging, and contract manufacturing and assembly. *Id*. Nulogy provides a Nulogy Solution to its customers which includes unique and innovative software solutions to provide agile supply chain management. *Id*. ¶ 3. The Nulogy Solution used unique and secret proprietary information

1

regarding processing, operating, managing and reporting products and resources, which Nulogy maintains as confidential and protects against disclosure. *Id*. Nulogy was among the first companies in the world to create software specifically for contract packaging operations, which gave Nulogy an early and sustained competitive advantage in agile supply chain technology. *Id*. ¶ 30.

In or around 2008, Menasha entered into a business relationship with Nulogy to gain access to and use Nulogy's Solution and attendant confidential information. *Id*. ¶ 4. In or around 2015 Menasha exploited the business relationship with Nulogy to gain expanded access to the Nulogy Solution, software and secret information to assist with different aspects of Menasha's business. *Id*. ¶ 5. Menasha told Nulogy that Menasha intended to have Deloitte undertake an overall review of Menasha's systems and operations, referred to by Defendants as "Project Zephyr". *Id*. Menasha and Deloitte told Nulogy that, as part of that project, Defendants needed Nulogy to provide substantial confidential information about the Nulogy Solution. *Id*. ¶ 7. At Defendants' requests, Nulogy made a number of disclosures from 2015 through 2018 including at presentations and meetings at Defendants' Chicago offices. *Id*. ¶ 8.

In 2016, Menasha entered into a four year extension of its license from Nulogy that expanded the use by Menasha to all of its operations. *Id*. ¶ 48. In 2018 Menasha further negotiated the License Agreement with Nulogy, effective January 2019, extending into 2021 with the option to renew for another two years. *Id*. ¶ 49.

Nulogy alleges that without its knowledge, Defendants embarked on a plan and conspiracy to misappropriate the confidential and proprietary trade secret

2

information and materials of Nulogy, and to have Deloitte use that misappropriated information to make a new system for Menasha to replace the Nulogy Solution and software. *Id.* ¶ 10. As part of their plan and conspiracy, Defendants installed a test version of a solution misappropriating Nulogy's trade secret information at a facility located in Romeoville, Illinois, and another in Dallas, Texas. *Id.* ¶ 11. Nulogy first learned of this attempted misappropriation in or around May 2019. *Id.* ¶ 12. Upon learning of Defendants' planned launch, Nulogy provided written notice to Defendants on or around June 7, 2019, demanding the system based on misappropriated information and materials not be launched. *Id.* ¶ 13. On July 7, 2020, Nulogy filed an action against Menasha and Deloitte in the Ontario, Canada Superior Court of Justice (a Provincial Court) for breach of Canadian contracts and other related Canadian claims (the "Canadian Action"). *Id.*[1]

Nulogy brings claims against Defendants in this court under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836(b), 1839 *et seq.* (Count I) and the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065 *et seq.* (Count II).

**II. Standard**

Where a defendant has moved to dismiss based on a forum selection clause, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S.*

---

[1] On July 7, 2020, Nulogy filed its Statement of Claim in the Ontario Superior Court of Justice. (Dkt. 25-5). On March 1, 2021, Nulogy filed its Amended Statement of Claim voluntarily dismissing its trade secret claim and dismissing Deloitte. (Dkt. 25-8). Nulogy refers to the Canadian Action in its complaint and the action is also subject to judicial notice. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).

3

*Dist. Ct. for W. Dist. of Texas,* 571 U.S. 49, 60, 134 S. Ct. 568, 580, 187 L. Ed. 2d 487 (2013). *See also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018). "'The *forum non conveniens* determination is committed to the sound discretion of the trial court.'" *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 950 (N.D. Ill. 2019) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 252, 266, 70 L. Ed. 2d 419 (1981)). Where a forum selection clause specifies a specific venue with "mandatory or obligatory language, the clause will be enforced." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992).

**III.  Analysis**

Menasha moves to dismiss on four grounds including the forum selection clause. Deloitte filed a motion under Federal Rules of Civil Procedure 9(b) and 12(b)(6).[2] Menasha relies on the forum selection clause in the License Agreement between Menasha and Nulogy. Nulogy responds that the clause does not govern its U.S. statutory claims and even if it did, public policy favors joining all Defendants in a single action in this court.

### A.  The Forum Selection Clause Governs

The License Agreement, effective January 1, 2019 and executed by Nulogy and Menasha (Dkt. 26-1, Exh. A), contains a provision addressing the governing law and venue. Section 12(d) of the agreement states:

> The Agreement and any action related thereto will be governed by and construed in accordance with the substantive laws of the Province of Ontario and the federal laws of Canada applicable therein, without

---

[2] For the reasons set out below, the Court grants Menasha's motion to dismiss based on *forum non conveniens* and does not address the other arguments in Menasha's motion or address Deloitte's motion.

4

>regard to conflicts of laws principles. The Parties will initiate any lawsuits in connection with the Agreement in Toronto, Ontario, Canada, and irrevocably attorn to the exclusive personal jurisdiction and venue of the courts sitting therein…

License Agmt. § 12(d). Nulogy does not argue that the forum selection clause in Section 12(d) is unenforceable or not mandatory. Nulogy argues only that the clause does not govern this case. The Court disagrees.

The language in the forum selection clause is sufficiently broad to encompass this lawsuit: the parties "will initiate *any lawsuits in connection with the Agreement* in Toronto, Ontario, Canada, and irrevocably attorn to the…venue of the courts sitting therein…" License Agmt. § 12(d) (emphasis added). Nulogy argues that its claims in this case are not contract-related, and the language in Section 12(d) is too narrow to cover the trade secret claims. However, "[c]ourts construe forum selection clauses broadly." *Pro. LED Lighting, Ltd. v. Aadyn Tech., LLC*, 2014 WL 6613012, at *6 (N.D. Ill. Nov. 21, 2014); *see also ISA Chicago Wholesale, Inc. v. Swisher Int'l, Inc.*, 2009 WL 3152785, at *5 (N.D. Ill. Sept. 25, 2009) ("Federal courts routinely find that non-contractual claims fall within the scope of contractually-based forum selection clauses.") (collecting cases). Further, although Nulogy has not alleged a breach of contract claim here, the claims relate to the License Agreement. In Section 7, entitled "Confidential & Proprietary Information," the License Agreement defines confidential information, delineates Menasha's obligations as to the confidential information, and describes exceptions to confidentiality. License Agmt. § 7. In its complaint, Nulogy refers to the License Agreement when it alleges that Menasha

5

accessed its confidential and proprietary information. *See* Compl. ¶¶ 39, 48, 49, 61, 62.³

The Court finds that the forum selection clause governs, so it will turn to Nulogy's objections to its enforcement.

### B. The Court Will Enforce the Forum Selection Clause

In 2013 the Supreme Court held that "forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. In *Mueller,* the Seventh Circuit emphasized, "*Atlantic Marine* holds that only an exceptional public-interest justification can displace a contractual choice of forum." 880 F.3d at 893. A valid forum selection clause "[should be] given controlling weight in all but the most exceptional cases," "the plaintiff's choice of forum merits no weight," and "the party defying the forum-selection clause...bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 571 U.S. at 60, 63 (internal quotation marks omitted). The Court does not consider arguments about the parties' private interests here because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient." *Id.* at 64.

---

³ The complaint alleges: "The Nulogy license agreements which were agreed to by Menasha provide…that the information and materials provided by Nulogy are confidential and proprietary to Nulogy, that Menasha and those accessing the information and materials on Menasha's behalf will maintain the confidentiality of that information and materials and that Menasha and those accessing the information and materials on Menasha's behalf will not use the information and materials to make a similar or competitive product or a product that uses features, functions or graphics similar to that of the Nulogy Solution." Compl. ¶ 61. "Nulogy relied upon the agreement by Menasha…to such terms of confidentiality and non-use for unauthorized purposes in providing requested trade secret information to Menasha and Deloitte." *Id.* ¶ 62.

6

Nulogy contends that a Canadian court will not have experience with the U.S. trade secret law. First this argument ignores the principle that "international forum-selection clauses are prima facie valid, especially when" as here, the clause was "freely negotiated between private parties." *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017) (citation omitted). For support, Nulogy relies on *Abad v. Bayer Corp.*, 563 F.3d 663 (7th Cir. 2009) but there was no forum selection clause in that case. Nulogy does not argue that it cannot (and indeed it did) assert trade secret misappropriation based on Canadian law in the Canadian Action.

Nulogy next argues that since Deloitte is not a party to the License Agreement, it must be allowed to proceed against Deloitte and Menasha in this venue. This case presents the challenge where one defendant, Deloitte, is not bound by the forum selection clause and the other is. That does not overcome the presumption favoring the forum selection clause as to claims against Menasha. In fact, eight months before filing this action, Nulogy filed its complaint in the Canada Superior Court of Justice bringing claims against Menasha and Deloitte including for misappropriation of trade secrets. In March 2021, Nulogy *voluntarily* amended its complaint to remove Deloitte as a defendant and remove the trade secret misappropriation claim. (Dkt. 25-8). Nulogy asserts that Deloitte "demanded proceedings not go forward in that forum" and Nulogy "acquiesced to Deloitte's demands" (Dkt. 41 at 9, 14), by voluntarily dismissing Deloitte from the Canadian Action. There was no court ruling on Deloitte as a defendant in that case or the merits of the trade secrets claims.

7

Having chosen this course, Nulogy argues that it should be able to proceed against both Defendants here because of public policy against piecemeal litigation. Nulogy relies on the "entire controversy doctrine." But as Menasha points out, that is a New Jersey state law doctrine. *See Glen Ellyn Pharmacy, Inc. v. Meda Pharms., Inc.,* 2012 WL 3580688, at *3 (N.D. Ill. Aug. 16, 2012) (applying New Jersey state law). Moreover, this policy argument cannot defeat the caselaw requiring the Court to enforce the choice of forum provision as to Menasha, and it really only begs the question why Nulogy did not pursue its trade secret claims against Deloitte in Ontario until the Canadian court ordered otherwise.

Instead, having voluntarily dismissed Deloitte from the Canadian Action, Nulogy now prefers to litigate its contract claims against Menasha in Canada and its trade secret claims against Menasha and Deloitte in this court. Initially, it is not clear to the Court how this is a public interest, rather than Nulogy's private interest. In any event this does not constitute an "exceptional public-interest justification" for "displac[ing] [the] contractual choice of forum." *Mueller,* 880 F.3d at 893. As the Seventh Circuit has stated, "a plaintiff cannot defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit." *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007) (cleaned up). *See also Pinkius v. Sirius XM Radio Inc.*, 255 F.Supp.3d 747, 751 (N.D. Ill. 2017) ("although judicial efficiency is important, the Supreme Court has instructed that forum selection clauses should be enforced in all but the most exceptional cases") (internal quotations omitted). Indeed "a forum-selection clause plays a very

8

significant role in furthering vital interests of the justice system…These clauses go a long way toward establishing predictability and certainty in legal transactions." *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 711 (7th Cir. 2020) (cleaned up). As the Supreme Court summarized in *Atlantic Marine:*

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.

571 U.S. at 66. In sum, Nulogy has not met its "burden of showing that public-interest factors overwhelmingly disfavor dismissal for *forum non conveniens*." *Pomerantz v. Int'l Hotel Co., LLC*, 359 F. Supp. 3d 570, 580 (N.D. Ill. 2019) (cleaned up).

For these reasons, the Court grants Menasha's motion to dismiss. This means that the case in its entirety is dismissed. "[A] successful motion under *forum non conveniens* requires dismissal of the case." *Atl. Marine*, 571 U.S. at 66, n. 8. *See also Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 443 (7th Cir. 2012) ("doctrine of *forum non conveniens*…would require the dismissal of the claim against [second defendant] Starwood as well, even if it weren't entitled to enforce the forum selection clause."); *Pomerantz,* 359 F. Supp. 3d at 582 ("A dismissal based on *forum non conveniens* is without prejudice.").

## IV. Conclusion

For the stated reasons, Menasha's Motion to Dismiss [25] is granted. Deloitte's Motion to Dismiss [22] is denied without prejudice as moot. The complaint is dismissed without prejudice. Judgment shall be entered in favor of Defendants. Civil case terminated.

E N T E R:

Dated: March 10, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge